UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| WILLIAM MALONE | CIVIL ACTION NO. 05-0992-M |
| VS. | SECTION P |
| DALE DAUZAT, ET AL. | JUDGE JAMES |
| | MAGISTRATE JUDGE HAYES |

## REPORT RECOMMENDING DISMISSAL OF SOME BUT NOT ALL OF PLAINTIFF'S CIVIL RIGHTS CLAIMS

Before the court is the civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* by *pro se* plaintiff William Malone on June 8, 2005. Malone is a federal prisoner. He is in the custody of the Federal Bureau of Prisons and is currently incarcerated at the Federal Prison Camp, Millington, Tennessee. However, he complains of an incident that occurred while he was being detained on behalf of the Federal Bureau of Prisons at the Tensas Parish Detention Center (TPDC) in Waterproof, Louisiana. Plaintiff names TPDC Assistant Warden Dale Dauzat, TPDC Chief of Security Fred Schoonover, TPDC Deputy Warden Judy McJimasey, TPDC Corrections Officers Rickey Jones, Robert Oliver, Chris Herron, Henry Hudson, Michael Gray, Wylone Johnson, Bradley Campbell, and Nolan Bass, and TPDC Systems Administrators/Postmasters, D. Bates and Deborah Miller as defendants. He seeks compensatory and punitive damages against each defendant.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C §636 and the standing orders of the court.

## STATEMENT OF THE CASE

The original complaint, exhibits, and amended complaint allege the following:

1. On May 18, 2004, plaintiff was a federal "holdover detainee" housed at the Tensas Parish Detention Center. On that date, "at or about supper time in the evening..." a disturbance involving immigration detainees occurred in the unit in which plaintiff was housed. TPDC staff entered the unit and ordered everyone to get down on the floor. Plaintiff, "...who was assigned to bed rest due to his infirm condition..." could not comply with the order and was approached by an unspecified number of corrections officers, including Henry Hudson, Robert Oliver, Bradley Campbell, and Chris Herron. These officers continued to demand that plaintiff "hit the floor." Plaintiff attempted to explain his situation to these officers but his explanation was disregarded. Officers Oliver and Campbell then "snatched [plaintiff] from his bunk to a standing position." Hudson, who was equipped with a riot shield, then ran hard into plaintiff with the shield as Herron kicked plaintiff's legs out from under him. As a result, plaintiff was "slammed" onto a pile of handcuffs and chains on the floor. He was then physically beaten by Oliver, Campbell, Herron, Jones, and Gray and other unnamed corrections officer. As a result of this incident, plaintiff's hand was broken. [See Doc. 1-1, p. 2; Doc. 7]

2. Plaintiff was handcuffed and dragged into the hall. While in the hallway, plaintiff requested medical assistance from Assistant Warden Dauzat; however, Dauzat advised the plaintiff to "Shut ... up and relax." Plaintiff then asked the Warden for assistance and his request was ignored. (The Warden only asked whether or not plaintiff wanted a transfer to another unit.) [Doc. 1-1; Doc. 7]

3. During the period between May 18, 2004 – May 24, 2004, plaintiff complained to unnamed members of the TPDC medical department about his hand. Throughout this period he requested, but was denied medical treatment. On May 24 he was examined, diagnosed and

treated for a "broken hand." [Doc. 7]

   4. On May 19, 2004 plaintiff filed a first step Administrative Remedies Procedure (ARP) grievance complaining about the incident alleged to have occurred on May 18. In his ARP plaintiff claimed that the incident in question occurred "around noon time." He claimed that at that time there was a raid conducted by corrections officers. Plaintiff claimed to have showed the officers his federal prisoner identification card. Nevertheless, he was "slamed [sic] down and draged [sic] down the hall..." causing damage to his right hand. He requested medical attention from the Assistant Warden but was told to "shut ...up." He also reported his injury to the Warden who then asked him if he wanted to be transferred. Plaintiff asked for "immediate action and restition.[sic]." Submitted along with the ARP was a statement signed by witnesses to the event. In that statement, apparently written by plaintiff, he stated, "The undersigned are the people who witnessed the assault by one of the officers during a raid against the INS detainees. Although I identified myself to be a Fed's detainee and showed my Fed's I.D. to them, I still was beaten and pulled me on the floor. As you know I have been ordered by medical people for bed rest and for this reason I was in the Dorm where assault happend [sic] and my hand was broken." [Doc. 1-1, p. 11] This ARP was apparently received by the TPDC administration on May 18, 2004 and was assigned to Lt. Bass for investigation. [Doc. 1-1, p. 12]

   5. Sometime after June 17, 2004, plaintiff submitted a hand-written letter to the Warden. Therein plaintiff advised, "I William Malone file[d] a first step response form to Lt. Nolen Bass it was forward to him from Dale Dauzat Deputy Warden on June 17, 2004 his reference was please investigate this matter and report to him in writing ASAP... Warden I have submitted request and ARP in regard to this matter I'm not satisfied with respond [sic] please investigate this matter fully I have no choice but to exhaust all remedy I have sign a consent form in regard

3

to my medical release and letter of affivid [sic] to all party involved..." [See Doc. 1-1, pp. 13, 14]

6. On June 24, 2004 plaintiff submitted an Emergency ARP, Second Step Response Form. Therein plaintiff stated, "I William Malone have filed a first step response it was dated May 19, 2004 it was forward to the chain of command of this facility. This matter was looked into by Lt. Bradley Campbell and Deputy Warden Dale Dauzat in turn Lt. Nolen Bass made a reference that was report on 6-22-04. I am submitting a 2nd Step ARP because I am not satisfied with respond [sic]. I would like a copy of the first report ... Please investigate this matter further or I have no other choice but exhaust all remedy..." [Doc. 1-1, p. 15]

7. Plaintiff thus claims that he was the victim of excessive force and thereafter to deliberate indifference to his medical needs. Plaintiff seeks compensatory damages in the amount of $3 million. He seeks an additional $3 million for pain and suffering, and, an additional $3 million in punitive damages.

## LAW AND ANALYSIS

### 1. Exhaustion of Administrative Remedies

The Civil Rights of Institutionalized Persons Act, codified at 42 U.S.C. §1997e, was amended on April 26, 1996 by the Prison Litigation Reform Act (PLRA). As amended, §1997e(a) makes the exhaustion of available administrative remedies mandatory in prison conditions cases.

Section 1997e(a) provides,

> (a) Applicability of Administrative Remedies – <u>No action</u> shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility <u>until such administrative remedies as are available are exhausted.</u> (Emphasis supplied)

This is a prison condition case, exactly the type of case which can best be resolved by

corrections officials without resort to judicial action.

Plaintiff advanced two separate claims in his complaint. He alleges that he was the victim of excessive force with respect to the incident which occurred on May 18, 2004, and, thereafter, he claims that he was denied appropriate medical care and treatment during the period from May 18 – 24. With respect to plaintiff's medical care claims, the pleadings, taken in the light most favorable to the plaintiff, establish that plaintiff failed to exhaust all available administrative remedies with respect to these claims as required by 42 U.S.C. §1997e(a).

A review of the grievances submitted by plaintiff demonstrate that he failed to grieve the alleged denial of medical care. [See Doc. 1-1, pp. 10-11; 13; 16] Under current federal law, plaintiff must have fully exhausted the administrative remedy procedure before proceeding herein. The statute provides for no exceptions.[1] The statute precludes any further action on his medical care claims until he has fully exhausted the administrative remedy procedure. See also *Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir. 1998)(§1997e(a) "plainly requires that administrative remedies be exhausted before the filing of a §1983 suit, rather than while the action is pending..." "[t]o hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation."); *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998)(dismissal for failing to exhaust administrative remedies is justified "as a deterrent to premature filing by...other potential litigants, thus serving the Congressional purpose of providing relief from frivolous prisoner litigation..." and "[b]y choosing to file and

---

[1] See also *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002), "... we hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. (citation omitted)"

pursue his suit prior to exhausting administrative remedies as required, [the plaintiff] sought relief to which he was not entitled--that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures.").

Thus, since it does not appear that plaintiff filed any grievance with respect to the denial of medical care claim he now seeks to litigate, that aspect of his complaint is subject to dismissal on in accordance with the provisions of 42 U.S.C. §1997e(a).

The only fault alleged with respect to Assistant Warden Dale Dauzat and the TPDC Warden (who is not identified in plaintiff's pleadings) is their refusal to provide prompt medical care to the plaintiff on May 18. [See Doc. 1-1, p. 5] Therefore, since plaintiff's medical care claims must be dismissed, his claims against Dauzat and the Warden must likewise be dismissed.[2]

### 2. Other Defendants

In his original complaint, plaintiff named TPDC Security Chief Fred Schoonover, Dy. Warden Judy McJimasey, Corrections Officers Rickey Jones, Robert Oliver, Chris Herron, Henry Hudson, Michael Gray, Wylone Johnson, Bradley Campbell, and Nolan Bass, and systems administrators D. Bates and Deborah Miller as defendants. [Doc. 1-1] Plaintiff was directed to

---

[2] Further, to the extent that plaintiff alleges liability on the part of these defendants (or any other supervisory defendants) his claim must fail. "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; and (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir.1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir.1994), *cert. denied*, 514 U.S. 1107, 115 S.Ct. 1957, 131 L.Ed.2d 849 (1995). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.), *cert. denied*, 464 U.S. 897, 104 S.Ct. 248, 78 L.Ed.2d 236 (1983). Since plaintiff has failed to allege personal involvement or the implementation of unconstitutional policies, his claims against these and other supervisory officials must be dismissed.

amend his complaint to provide specific factual allegations with regard to the fault of each named defendant.

In his amended complaint [Doc. 7], plaintiff alleged the following with respect to the named defendants:

1. Corrections Officer Wylone Johnson was engaged in "horseplay" with some unidentified immigration detainee. This horseplay, according to plaintiff, precipitated the subsequent "riot."

2. Systems Administrator/Postmaster Deborah Miller placed "numerous handcuffs and chains ... on the floor near the Plaintiff's assigned bunk..." When plaintiff was "thrown" to the floor, he landed on these chains.

3. Corrections Officers Hudson, Oliver, Campbell, Herron, Jones, and Gray were alleged to have used excessive force against the plaintiff.

4. Plaintiff alleged no fault with respect to Security Chief Fred Schoonover, Deputy Warden McJimasey, Lt. Nolan Bass, or Systems Administrator D. Bates.

a. Defendants Shoonover, McJimasey, Bass and Bates

Plaintiff was specifically ordered to comply with the requirements of Federal Rules of Civil Procedure Rule 8, which, while it does not require explicit detail, does require a plaintiff to allege <u>specific facts</u> which support the conclusion that his constitutional rights were violated by each person who is named as defendant. Since plaintiff alleged no facts to support the conclusion that defendants Schoonover, McJimasey, Bass, or Bates violated any of his constitutional rights, any claims against those defendants must likewise be dismissed.

b. Defendants Johnson and Miller

Plaintiff infers that Johnson is liable because his "horseplay" precipitated a riot. He

7

claims that Miller is liable because she placed shackles and chains in close proximity to his bunk. Neither complaint states a claim for which relief may be granted.

Congress enacted 42 U.S.C. § 1983 as "a species of tort liability in favor of persons who are deprived of rights, privileges, or immunities secured to them by the Constitution." *Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 305-06, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986).

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. § 1983.

To state a cause of action under Title 42 U.S.C. § 1983, the plaintiff must plead, seven elements. First, the plaintiff must show the existence of a constitutional right. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Second, the plaintiff must show that there was a deprivation of that clear right, privilege or immunity secured to the plaintiff by the Constitution of the United States of America. *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979) ("inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a 'right secured by the Constitution and the laws'"). Third, the plaintiff must show that the defendants acted under "color of state law." *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Fourth, plaintiff must show that there exists a direct causal connection, *Canton v. Harris*, 489 U.S. 378, 387-388, 109 S.Ct. 1197, 1203-1205, 103 L.Ed.2d 412 (1989), without intervening factors, between the deprivation and some injury to

plaintiff. *Bennett v. City of Slidell*, 728 F.2d 762 (5th Cir.1984) (deprivation must be specifically identified and tied to the injury). Fifth, plaintiff needs to establish that the act or omission by the defendant was intentional or at least deliberately indifferent to the Constitutional or Federal law rights of the plaintiff. *Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir.1990); *Doe v. Taylor Independent School District*, 975 F.2d 137, 142 (5th Cir.1992) (deprivation can result from tortious conduct exceeding mere negligence but not quite rising to the level of intentional, e.g., deliberate (or conscious) indifference, recklessness or gross negligence), *reh'g granted* and opinion vacated by *Doe v. Taylor Independent School District*, 987 F.2d 231 (5th Cir.1993), on rehearing, *Doe v. Taylor Independent School District*, 15 F.3d 443, 450 (5th Cir.1994). Sixth, the plaintiff must show that he suffered actual injury. *Memphis Community School District v. Stachura*, 477 U.S. 299, 308, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249 (1986) (where there is no injury present, no compensatory damages can be awarded). And finally, the plaintiff must prove damages as a proximate result of the injury. *Carey v. Piphus*, 435 U.S. 247, 264, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252 (1986) (compensatory damages can be awarded where plaintiff has proved an actual injury caused by the denial of his constitutional rights).

Plaintiff's claims against Johnson and Miller are subject to dismissal on two grounds. First, there is no direct causal connection between the acts alleged and the harm suffered by the plaintiff. Second, the acts alleged appear to be, if anything, acts of negligence and therefore, the requisite intent is lacking.

In short, plaintiff fails to state a claim upon which relief may be granted as to the two named defendants.

Accordingly**,**

**IT IS RECOMMENDED** that:

1. Plaintiff's medical care claims against all defendants including

   **(A) DALE DAUZAT** and,

   **(B) THE WARDEN OF TPDC** be **DISMISSED** for failure to exhaust

   administrative remedies as mandated by the provisions of 42 U.S.C. §1997e(a);

2. Plaintiff's excessive force claims against defendants

   **(A) CORRECTIONS OFFICER WYLONE JOHNSON,**

   **(B) SYSTEMS ADMINISTRATOR DEBORAH MILLER,**

   **(C) CHIEF OF SECURITY FRED SCHOONOVER,**

   **(D) DY. WARDEN JUDY McJIMASEY,**

   **(E) LT. NOLAN BASS** and

   **(F) SYSTEMS ADMINISTRATOR D. BATES**

be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be afforded in accordance with the provisions of 28 U.S.C. §§1915 and 1915A.[3]

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P.**

---

[3] It appears that plaintiff has stated excessive force claims which survive initial review with regard to defendants, Hudson, Oliver, Campbell, Herron, Jones, and Gray. A separate order directing service of process against these defendants will therefore be prepared.

**6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

      **THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this 14th day of October, 2005.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE